UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

ALI AHMED,
(PETITIONER),

v.

WARDEN, FCC COLEMAN – CAMP,
FEDERAL BUREAU OF PRISONS, Et. Al.,
(RESPONDENT),

CIVIL NO:   TO BE ASSIGNED
CASE NO:   19-CR-60200

5:25-CV-378 SPCPRL

## MEMORANDUM OF LAW IN SUPPORT OF
## PETITION FOR A WRIT OF HABEAS CORPUS UNDER 28 U.S.C. §2241

Comes now, the petitioner, Ali Ahmed, hereinafter "Ahmed" or Petitioner, pro se, with this Petition for Writ of Habeas Corpus under 28 U.S.C. §2241. In the Eleventh Circuit, courts are required to liberally construe pro se filings. In the Eleventh Circuit, pro se pleadings are held to less stringent standards than those drafted by lawyers and are liberally construed to facilitate access for relief. For instance, in Campbell v. Air Jam, Ltd., 760 F.3d 1165, the court stated, "We hold the allegations of a pro se complaint to less stringent standards than formal pleadings drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972). Accordingly, we construe Campbell's pleadings liberally." Campbell v. Air Jam, Ltd., 760 F. 3d 1165.

Petitioner avers upon information and belief as follows:

1. Petitioner Ali Ahmed ("Petitioner"), a prisoner at the Federal Correctional Complex Coleman – Camp, Coleman, FL ("Coleman Camp"), Register # 20304-104, petitions for emergency Habeas Corpus relief under 28 U.S.C §2241 and preliminary injunctive relief.

2. Respondent Warden Mendoza serves as Warden of Coleman Camp and acts with the authority of the Bureau of Prisons (BOP).

## REQUEST FOR EXPEDITED CONSIDERATION

3. Petitioner respectfully requests an expedited review and resolution of this matter, asserting legal entitlement to immediate transfer to pre-release custody. Petitioner is currently subjected to irreparable harm and significant violations of his rights, as detailed below.

## JURISDICTION, VENUE AND PLEADING

4. This court has subject matter jurisdiction under 28 U.S.C. §2241. Habeas corpus review is available under §2241 if a prisoner is in custody in violation of the constitution or Federal Law. See 28 U.S.C §2241(c)(3). It is well established that §2241 is the proper vehicle for an inmate to challenge the fact of length of confinement. Preiser v. Rodriguez, 411 U.S. 475, 484 (1973), or the 'execution' of the confinement. Woodall v. Fed. BOP, 432 F. 3d 235, 241-42 (3rd Cir. 2005). See also United States v. Serfass, No. CR 3:15-39, 2020 WL 1874126, at *1 (M.D. Pa. Apr. 15, 2020)(concluding that §2241 is the appropriate vehicle to pursue relief and that the district in which the inmate is confined is the appropriate venue); Putnam v. Winn, 441 F. Supp. 2d 253, 259 (D. Mass. 2006) (granting §2241 relief to a BOP inmate and directing that BOP reconsider Putnam's halfway house placement in good faith in accordance with applicable standards). It is clear that the extension of an inmate's imprisonment affected by BOP's failure to follow First Step Act ("FSA") requirements compels habeas relief. Borker v. Bowers, No. CV 24-10045-LTS, 2024 WL 2186742 (D. Mass. 2024).

5. Venue is proper under 28 U.S.C. §1391 because Petitioner is in custody in this District. An actual and justiciable controversy exists between the parties, and this Court has the authority to grant declaratory and injunctive relief. See 28 U.S.C. §1651. Further, this Court has subject matter jurisdiction over this action pursuant to Article 1, §9, Clause 2 of the U.S. Constitution, the 5th and 8th Amendments to the U.S. Constitution, 28 U.S.C. §1331, and 28 U.S.C. §1651. In addition, the Court has authority to grant injunctive relief pursuant to the Declaratory Judgement Act, §2201.

## STATEMENT OF THE CASE

6. Petitioner claims that Respondent and his Coleman Camp staff, including case manager and unit team manager (collectively, "Coleman Camp Unit Team"), and the BOP, have violated federal statutes by failing to facilitate his immediate transfer to pre-release custody, either to a Residential Recovery Center or Home Confinement.

7. Petitioner is presently serving a 120-month sentence, imposed on January 20, 2020, in the Middle District of Florida, Case No. 19-CR-60200. Petitioner's current projected release date is July 3, 2027. (See https://bop.gov/inmateloc/).

8. On December 21, 2018, the First Step Act ("FSA"), 18 U.S.C. §3632, was signed into law. The FSA grants eligible inmates the ability to earn time credits ("FTCs") for successfully participating in and completing approved EBRR programs and or Productive Activities. Petitioner is eligible, and has sufficient time credits to qualify for immediate transfer to pre-release custody, either to a Residential Recovery Center or Home Confinement.

9. After sentencing on January 20, 2020, Petitioner was immediately received into custody and designated to the Federal Detention Center (FDC) Miami awaiting transfer to Federal Correctional Institution (FCI) Miami. Consequently, under 18 U.S.C. §3585(a) and §3632(d)(4)(B)(ii), Petitioner starts receiving FSA FTC credits beginning with the date of sentencing which is January 20, 2020.

10. As of June 12, 2025, Petitioner has served approximately 65 months of a 120 month sentence. With projected Good Conduct Time ("GCT"), Petitioner has received 18 months off his sentence (15% of total sentence). Petitioner has been eligible for the FSA FTCs since the start of his term of imprisonment and has earned a sentence reduction of one year (the BOP has applied 365 days of FTCs towards Petitioner's projected release date). Consequently, Petitioner's projected release date is now July 3, 2027. By law, Petitioner's legally mandated projected FTC equate to an additional 30 months being applied towards Residential Reentry Center ("RRC") and/or Home Confinement ("HC"), establishing an FSA eligibility date of February of 2025.

Additionally, under the Second Chance Act ("SCA"), Petitioner is entitled to up to twelve (12) months towards prerelease custody, yielding a date of February of 2024, mandating referral to RRC and/or HC be submitted by at least December of 2023[1].

11. Petitioner contends that despite repeated requests, by specifically using and following the BOP Administrative Remedy Process (See Exhibit 1), Coleman Camp Unit Team has refused to 1) give Petitioner FTC credit from January-2020 to October-2020 and 2) apply the correct FTCs towards his pre-release RRC/HC custody date, in violation of federal law and BOP Program Statement 5410.01[2].

12. Petitioner asserts that the failure of the FCC Coleman Camp Unit Team to correctly calculate and apply the FSA FTCs towards his sentence constitutes a violation of the congressional intent under Title 18 U.S.C. §3632. This failure results in irreparable harm by unlawfully extending Petitioner's confinement beyond what is permitted by law. The denial of statutorily mandated credits also creates a constitutional violation that this Court should address to avoid further injustice.

### FIRST STEP ACT AND SECOND CHANCE ACT

13. The Second Chance Act ("SCA") mandates that the BOP "shall, to the extent applicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months) under the conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community." 18 U.S.C. §3624(c)(1). The BOP may place eligible inmates in "home confinement" or a "residential reentry center." Id. §3624(g)(2)(A)-(B). The SCA requires the BOP to consider eligibility under a Five Factor Review, including: (1) Family Resources; (2) Offense; (3) Prisoner; (4) Court Statement; and (5) Sentencing Commission.

---

1. BOP Program Statement 5410.01 - RRC and/or HC referrals will ordinarily be submitted to the respective Residential Reentry Management (RRM) office twelve months in advance of the inmate's PRD or at least sixty days prior to the projected RRC/HC placement date, whichever is greater. The RRC and/or HC recommendation will include the total number of days recommended based on the five factor review, required by the SCA, plus the remaining number of FTC days available to be applied toward RRC/HC placement, the Bureau will assume that the inmate will remain in earning status from the referral date until the transfer of pre-release custody.

2. Petitioner's inmate request form to Camp Administrator Ortiz dated February 25, 2025, BP-8 to Case Manager Coriano on March 10 and May 22, 2025, and BP-9 to Warden Mendoza on June 2, 2025, requesting placement to pre-release custody.

14. Under the FSA, eligible prisoners "who successfully complete evidence-based recidivism reduction programming or productive activities shall earn time credits" at a rate of 10 days for every 30 days of successful participation. 18 U.S.C. §3632(d)(4)(A). Prisoners classified as minimum or low-risk recidivism risk shall earn and additional 5 days of time credits for every 30 days of successful participation. Id. at §3632(d)(4)(A)(ii). If those credits reduce an inmate's prison term to the point where they qualify for pre-release custody or supervised release, the FSA directs the BOP to "transfer eligible prisoners into pre-release custody or supervised release." Id. at §3632(d)(4)(C).

15. Pursuant to the First Step Act Annual Report (April 2023), on November 18, 2022, the BOP implemented a new Program Statement (5410.01) to calculate and award time credits to the full term of incarceration, presuming that earned time credits will accrue throughout the term. (See https://bop.gov/2023AnnualReport.pdf - 1 at p. 18).

16. On November 20, 2023, the BOP released the First Step Act Admission and Orientation Addendum ("BOP RRC/HC Addendum"), clarifying that the policy requires the inclusion of Second Chance Act (12 months) statutory home confinement and the **maximum possible earned First Step Act Time Credits** ("FTCs") for pre-release placement. The BOP RRC/HC Addendum includes a graphical depiction of the proper stacking methodology for RRC/HC placement. (See Exhibit 2).

17. Further validation of the stacking requirement was provided by the North Central Regional Office ("NCRO") of the Reentry Services Division of the BOP during a town hall. NCRO official confirmed that, per the Second Chance Act, FCC Coleman Camp Unit Team is required to stack the SCA 12 months RRC/HC after adjusting for the maximum possible usable FTCs (confirmation at minute 22:20 of the 48-minute town hall video released by the BOP on YouTube on July 15, 2024).

18. On May 28, 2025, a mandate was even issued by the new BOP Director, William K. Marshall III, "directing staff to expand the use of home confinement for eligible individuals outlining the expectation that home confinement is a priority and that there is **no restriction** concerning how many FTCs may be applied toward home confinement." (See Exhibit 3).

**ANALYSIS IN SUPPORT OF IMMEDIATE RELEASE TO PRE-RELEASE CUSTODY**

19. The following First Step Act ("FSA") and Second Chance Act ("SCA") Residential Reentry Center/Home Confinement Analysis for Petitioner details the First Step Act Earned Time Credits ("FTCs") calculation based on the Bureau of Prison's First Step Act Admission and Orientation Addendum dated November 20, 2023 ("BOP RRC/HC Addendum"). The BOP RRC/HC Addendum provides a graphical depiction ("FSA Graphical Depiction") of the BOP's methodology of calculating an inmate's home conferment eligibility date ("HCED") under the SCA and the Maximum Possible Usable Earned Time Credits ("Maximum Usable FTCs") resulting in the earliest possible eligibility date for RRC/HC (See Exhibit 2 at p. 2).

    Relevant Dates for Petitioner:
    Date of Remand:              January 20, 2020
    Sentence Length:             120 Months
    Statutory Sentence Length:   102 Months (GCT credit of 15% of 18 months)
    Projected Statutory
    Release Date:                July 2, 2028

20. Under 18 U.S.C. §3585(a) and §3632(d)(4)(B)(ii), Petitioner starts receiving FTC credits beginning with the date of sentencing which is January 20, 2020. See <u>Sharma v. Peters</u>, 2024 U.S. Dist. LEXIS 199823, at *19-20 (M.D. Ala. Nov. 4, 2024); (citing <u>Yufenyuy v. Warden</u>, 659 F. Supp. 213, 218 (D. N.H. 2023); <u>Borker v. Bowers</u>, 2024 U.S. Dist. LEXIS 88869 (D. Mass. May 15, 2024); see also <u>Patel v. Barron</u>, 2025 U.S. Dist. LEXIS 56851, *3-5 (W.D. Wash. Sep 28, 2023). All concluding that it is clear that FTC credits start at the date of sentencing.

21. Given that the Petitioner has always been classified as Low or Minimum Recidivism Risk, is entitled to FTCs calculated as follows for the *first part* of the sentence while under BOP custody:

    <u>Months 1 - 6</u>:   6 months * 10 days/month   60 Days or 2.0 months of FTCs
    <u>Months 7-12</u>:   6 months * 10 days/month   60 Days or 2.0 months of FTCs
    <u>Months 13-29</u>: 17 months * 15 days/month  255 Days or 8.5 months of FTCs
    Sub-Total:                                      375 Days or 12.5 months of FTCs

- **After accumulating necessary FTCs, BOP automatically applies 365 days (12 months) of FTCs towards Petitioner's adjusted projected release date.**

22. Original Projected Release Date: July 2, 2028

    After one (1) year/365 days for early release earned FTCs results in Adjusted Projected Release Date:    July 3, 2027

    **The Adjusted Projected Release Date brings the length of sentence to 90 months**

23. FTCs calculated as follows for the *remaining part* of the sentence while under BOP custody:

    <u>Months 29-90</u>: 61 months * 15 days/month    915 Days or 30 months of FTCs

24. FSA Adjusted Projected Release Date after 915 Maximum Usable FTCs (30 months):

    February of 2025

25. The Second Chance Reauthorization Act ("SCA"), calls for inmates to earn 365 days of pre-release custody, a combination of RRC and HC. Petitioner is eligible for an additional 12 months towards RRC/HC, stacking this period after the remaining Maximum Usable FTCs pursuant to 18 U.S.C. §3624(c)(2). Therefore, under Federal Law, given the Petitioner's correct FSA Projected Release Date of February 2025, an RRC and/or HC referral should have been made for February of 2024, a date that has already passed.

26. Even without the use and stacking of the Second Chance Act ("SCA"), the First Step Act ("FSA") placement date for the Petitioner is February of 2025, a date that is almost six-6 months past due.

**UNLAWFUL USE OF DISCRETION AND SYSTEMIC FAILURE OF BOP**

27. FCC Coleman Camp's Unit Team's unlawful use of discretion and systemic failure of BOP to fully implement the First Step Act and refusal to apply projected FTCs correctly, coupled with the BOP's systemic failures to implement the FSA, and has resulted in unconstitutional incarceration.

Despite having the tools and knowledge to project and apply FTCs accurately, the Unit Team has instead relied on outdated and overruled policies[3].

28. Evidence of these systemic failures is found in the BOP Director Colette Peters testimony before the House Judiciary Subcommittee on Crime and Federal Government Surveillance on July 23, 2024. BOP Director acknowledged the BOP's inability to comply fully with the FSA due to a lack of resources and capacity issues in RRCs, which has resulted in significant delays for eligible inmates such as the Petitioner[4].

29. Numerous courts have held the Bureau of Prisons lacks discretion to delay or refuse the transfer of an eligible individual to pre-release custody due to lack of space at a Residential Reentry Center (RRC) or Halfway House. Congress anticipated the challenge of RRC capacity, which is why it included a statutory remedy with the First Step Act (FSA) to act a pressure valve in the event of insufficient RRC capacity. **The BOP has a mandatory alternative of home confinement**. Congress did not legislate a third option that would allow the BOP discretion to unlawfully incarcerate the Petitioner due to lack of RRC capacity.

---

3. https://www.youtube.com/live/fqwvivDaWPy?feature shared. subcommittee Chairman Andy Briggs stated, "I've received certain report that more than 60,000 First Step Act eligible inmates in the system face significant delays in pre-release to a halfway or their final release to freedom because there in not full compliance or you have not fully completed the First Step Act yet and there are estimates that these delays range from three months, to six months, to as many as twelve months depending on the length of sentence which may be costing tax payers as much as $5 billion per year according to estimates in the report. So I'm asking you to do todays numbers sound accurate to you." In response BOP Director Peters stated, "There is a lot frustration in the adult custody population with them already qualifying for RRC and we simply didn't have the capacity in the community. You are raising a very important point."

4. House Judiciary Jim Jordan asked, "Why are you not processing the projected earned time credits (FTCs for inmates for the full term of incarceration and only processing earned (the flawed and overruled method used by FCC Coleman Camp)," BOP Director Peters replied, "We do not have the resources, RRC are at capacity, we are underfunded and do not have enough staff to implement the federal programs (SCA and FSA).

30. In <u>Woodley v. Warden</u>, 2024 U.S. Dist. LEXIS 87521 (D. Kan. 2024), the court held that the BOP has no discretion to refuse or delay the transfer of an eligible inmate to pre-release custody[5]. Similarly in <u>Komando v. Luna</u>, 2023 U.S. Dist. LEXIS 114477 (D. N.H. 2023), and <u>Doe v. Warden of FCI</u>, 2024 U.S. Dist. LEXIS 19755 (S.D.N.Y. 2024), the courts affirmed the mandatory nature of FTCs and pre-release custody transfers under the FSA[6,7].

31. In <u>Loper Bright Enterprises v. Raimondo</u> (Case No. 22-451), the Supreme Court overruled <u>Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.</u> 467 U.S. 837 (1984), which compromises and call into question all BOP discretion to deny prisoners the rights granted by Congress in the First Step Act and the Second Chance Act. The decision in Loper rightfully empowers this Court to exercise its independent judgement in determining whether the BOP and the FCC Coleman Camp Unit Team have acted within their statutory authority. This Court may not defer to an agency's interpretation of the law simply because a statute is ambiguous. Loper removes obstacles to inmates receiving their duly earned and projected First Step Act Time Credits (FTCs), proper stacking of Second Chance Act twelve-month periods after the reduction of maximum remaining FTCs, and proper and timely RRC or home confinement placement – the same obstacles the Petitioner is facing with the FCC Coleman Camp Unit Team.

---

5. The BOP is required to "ensure there is sufficient pre-release custody capacity to accommodate all eligible persons." The court held the mere fact the RRC was full was not sufficient to keep Woodley in prison and the language of the FSA required petitioner to be released to RRC immediately, and if no bed space is available, to mandatory home confinement.

6. The provision's use of the mandatory term, "shall" places a duty on the BOP to apply credits and to transfer eligible prisoners either to supervised release or to pre-release custody. Komando.

7. The BOP is required to "ensure there is sufficient pre-release custody capacity to accommodate all eligible prisoners." Doe.

32. The Petitioner concedes that he has not completed the last step of the full Bureau of Prisons (BOP) standard four-step administrative remedy process. Apart from numerous conversations and meetings with the Coleman Camp Unit Team since November of 2024, the Petitioner has filed the 1) Inmate Request Form, 2) BP-8 to the case manager, and 3) BP-9 to the Warden (See Exhibit 1). However, the Petitioner argues that full exhaustion should not be required due to futility. Additionally Petitioner's FSA placement date is already significantly past due.

33. The Federal Litigation Reform Act of 1996 stipulates that before an inmate can bring a motion under habeas, like this one to the court, they must first exhaust all administrative remedies with the Bureau, except in cases where exhaustion would be futile. See Perez v. Joseph, No. 22-2-55, WL 2181090, at *2 (N.D. Fla. May 4, 2022); McGee v. Warden, FDC Miami, 487 F. 516, 518 (11th Cir. 2012)(exhaustion is not required if: (1) administrative remedies would be futile; (2) the actions of the agency clearly and unambiguously violate statutory or constitutional rights; 'or' (3) the administrative procedure is clearly shown to be inadequate to prevent irreparable injury.) See also Pina v. Mendota, Case No. 1:23-CV-1646, 2024 U.S. Dist. LEXIS 175864, *5 (E.D. Cal. Sept. 27, 2024).

34. In Brown v. Rieger, 2022 U.S. Dist. LEXIS 171207, 2022 WL 4376987 (D. Maine September 22, 2022), the Court held that Brown had a legitimate argument that she was not required to exhaust the ordinary BOP administrative appeals system due to futility. Brown was given incorrect information from the BOP regarding the process, the timeliness for calculating and recalculating her FSA credits, and the best way for her to obtain relief. The delays and confusion in obtaining an accurate count of her FSA credits were attributable to the BOP's interim procedures and decisions surrounding its automated system. Any delay was not the result of any lack of due diligence by Brown. Finally, following the full administrative process would exceed months past the RRC/HC eligibility date.

35. Therefore, due to suffering irreparable harm, being denied timely access to RRC/HC, and enduring extra-punitive incarceration at the hands of the Respondent and the FCC Coleman Camp Unit Team, not following the full administrative exhaustion should not

be an impediment to the Petitioners ability to obtain relief through this emergency §2241 motion, as the administrative process is futile.

## CONCLUSION

For the reasons outlined above, Petitioner prays that the Court grants him emergency relief from unconstitutional confinement, orders preliminary injunctive relief, including the correction of his FTCs, and mandates his immediate release to pre-release custody. The Petitioner has an approved family residence and can be transferred immediately to complete the remainder of his sentence on Home Confinement ("HC") as mandated by the First Step Act ("FSA"), 18 U.S.C. §3632 and Second Chance Act ("SCA"), 18 U.S.C. §3624.

06/10/25
DATE
(28 U.S.C. §1746)

Respectfully submitted,

Pro-se, Ali Ahmed
Register # 20304-104
FCC Coleman – Camp
PO Box 1027
Coleman, FL 33521

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this Motion has been furnished via the U.S. Postal Service First Class on this \_\_10th\_\_ day of \_\_JUNE\_\_, 2025 to:

United States District Court
Middle District of Florida – Ocala Division
205 NW 2nd Street
Ocala, FL 34475

\_\_06/10/25\_\_
DATE
(28 U.S.C. §1746)

Respectfully submitted,

Pro-se, Ali Ahmed
Register # 20304-104
FCC Coleman – Camp
PO Box 1027
Coleman, FL 33521

12